Hamidah Ali **FARAHKHAN**, Plaintiff,

v.

**ALABAMA OIL SUPPLY,** Defendant.

Civ. A. No. 85-C-2773-S.

United States District Court,
N.D. Alabama, S.D.

Dec. 30, 1986.

Michael Quinn, Robert L. Wiggins, Jr., Ann K. Norton, Gordon, Silberman, Wiggins & Childs, Birmingham, Ala., for plaintiff.

Jake V. Bivona, Paden, Green, Paden & Bivona, Bessemer, Ala., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CLEMON, District Judge.

In this action under Title VII of the 1964 Civil Rights Act, and 42 U.S.C. § 1981, plaintiff alleges that she was denied equal employment opportunities and discharged because of her race and sex. After hearing the evidence, the Court makes the following Findings of Fact.

1. Plaintiff Hamidah Ali Farahkhan is a black female citizen of the United States and the State of Alabama.

2. Plaintiff is a high school graduate; and she is a graduate of Lawson State Community College.

3. Plaintiff was hired on March 4, 1984, as a cashier at defendant's "Pair's Quick Stop," a convenience store. At the time she was hired by defendant, plaintiff had prior experience as a manager and cashier.

4. Within two weeks of her employment with defendant, the manager of Pair's Quick Stop, Andrew Rosato, voluntarily resigned his employment with the Company. Rosato is white.

5. Because of her exemplary performance as a cashier, Rosato recommended to Don Vincent that plaintiff be his replacement as manager. Vincent, the sole owner of the defendant company, accepted the recommendation and promoted plaintiff to the position of Manager at Pair's Quick Stop on March 15, 1984.

6. Plaintiff was an excellent manager at Pair's Quick Stop, and everyone was well-pleased with her performance. She was considered to be a valuable employee of the defendant.

7. Plaintiff was never warned or disciplined in any way concerning any aspect of her performance, conduct, or behavior as manager.

8. The defendant has no written or objective criteria or procedures for the evaluation of an employee's job performance.

9. James Timmons, a white male, had held the job of Manager at Pair's Quick Stop immediately prior to the time that Rosato held the position.

10. During his tenure of employment as manager, Timmons was warned on several occasions concerning various deficiencies in his conduct, performance, and behavior. If unheeded, these warnings served as a prelude to an involuntary termination of his employment as store manager.

11. Timmons' conduct, performance, and behavior did not improve; he eventually resigned and was replaced by Rosato.

12. Both Rosato and Timmons were paid $240.00 per week during the time they worked as store managers.

13. Plaintiff was paid $200 per week during the time that she worked as manager of Pair's Quick Stop.

14. Based on the evidence submitted to the Court, neither Rosato nor Timmons

was better qualified than plaintiff to serve as manager.

15. While he was manager of Pair's Quick Stop, Timmons was permitted by Vincent to hire his wife and grandson to work in the store.

16. Plaintiff was permitted by Vincent to hire her husband to work in the store.

17. During May, 1984, the defendant interviewed Joe Connelly, a white male, as a potential new employee. Connelly was eventually hired as a cashier, at the rate of $3.50 per hour.

18. At the time Connelly was hired in at $3.50 per hour, the two incumbent black cashiers were paid only $3.35 per hour.

19. On Saturday, June 16, 1984, the defendant's General Manager, Bill Barnett, called plaintiff at home and told her that her 9–year old son was in the store, and that she should come down and pick him up because the store was not a place for a child to be. After explaining that her husband had left their son at the store, with his uncle cashier Darrie Zeigler, plaintiff went to the store and picked up the son and brought him home.

20. There was no discussion about the previous day's incident during the time that plaintiff worked on Sunday, June 17, 1984. Barnett came to the store on that occasion.

21. On Monday, June 18, 1984, Joe Connelly came to the store during plaintiff's shift. He told plaintiff that he had been sent by Barnett to be trained by her in the operation of the cash register, because he (Connelly) was going to become manager.

22. A little while later on the afternoon of June 18, 1984, Barnett came to Pair's Quick Stop and summoned her outside. He then informed her that it was Vincent's decision that she be discharged. He did not give her any reason for the discharge.

23. Joe Connelly replaced plaintiff.

24. Joe Connelly had deficiencies in his conduct, performance, and behavior as an employee of defendant, and he was warned about these deficiencies by the defendant.

25. Defendant concedes that plaintiff was a better employee than Joe Connelly.

26. Joe Connelly was ultimately terminated by defendant because of his performance, after having received several warnings.

27. If plaintiff had not been discharged, she would have received a 10% wage increase for each year of her employment by the defendant.

28. Plaintiff diligently sought interim employment and accepted the same whenever it was available. She has earned $10,500 in the interim.

29. As of September 22, 1986, plaintiff would have earned $38,935 (including prejudgment interest) at the defendant company had she remained in its employ. She would have earned an additional $3,770 since September 22.

30. The defendant's assertion that plaintiff was discharged because she misled it by representing that she had hired her husband when in fact she had hired her nine-year old son to work as cashier is simply unworthy of credence.

31. Plaintiff was not paid the same wage as the two preceding managers of Pair's Quick Stop because of her race or color.

32. Plaintiff was discharged because of her race or color.

Based on the foregoing Findings of Fact, the Court makes the following Conclusions of Law.

1. Plaintiff has carried her *prima facie* burden of proof that she was discriminated against because of her race.

2. The sole reason articulated by the defendant for the discharge of plaintiff is unworthy of credence. Alternatively, the plaintiff has clearly established that the articulated reason for the discharge is a pretext for racial discrimination.

3. The sole reason advanced by the defendant for the disparity in plaintiff's salary as manager and those of her predecessors in that position is that she was not as

qualified or experienced as her predecessors.

4. Plaintiff has established, by a preponderance of the evidence, that the articulated reason for the disparity in salaries is a pretext for discrimination.

5. Plaintiff is entitled to the appropriate injunctive relief, reinstatement, backpay, attorney's fees, and reimbursement for costs and expenses.

By separate order, the relief will be granted.

## JUDGMENT AND PERMANENT INJUNCTION

Based on the accompanying Findings of Fact and Conclusions of Law, it is hereby ORDERED, ADJUDGED, DECLARED and DECREED as follows:

1. Defendant ALABAMA OIL SUPPLY has discriminated against plaintiff HAMIDAH ALI FARAHKHAN by paying her unequal wages and discharging her because of her race or color.

2. Defendant ALABAMA OIL SUPPLY, its officers—including, but not limited to, DON VINCENT, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are hereby PERMANENTLY ENJOINED from discriminating against plaintiff HAMIDAH ALI FARAHKHAN because of her race or color in its terms and conditions of employment.

3. Defendant ALABAMA OIL SUPPLY shall, not later than Monday, January 5, 1987, reinstate plaintiff HAMIDAH ALI FARAHKHAN in a managerial position of no less status than that which she occupied at the time of her unlawful discharge, and at a salary of not less than $290 per week.

4. Plaintiff HAMIDAH ALI FARAHKHAN shall have and recover of defendant ALABAMA OIL SUPPLY the sum of $32,-205.00 as backpay.

5. Plaintiff shall have and recover of defendant a reasonable attorney's fee, to be set by the Court in the absence of an agreement between the parties. Towards that end, plaintiff's counsel shall file with the Clerk of the Court an itemized statement of his time and expenses not later than February 5, 1987, in the absence of an appeal and an agreement of the parties. The Court will thereafter schedule a hearing on the matter.

6. The costs of this action are hereby taxed against defendant, for which execution shall issue.